The Chancellor.
The prayer of this bill is, that an act of the legislature of the state of New Jersey, entitled “An act authorizing the removal of certain mill dams from Rahway river and its branches within the limits of the townships of Rahway and Woodbridge, in the counties of Essex and Middlesex, “ approved March 3d, 1854, *177 with all the supplements thereto, may, by the decree of this court, be declared to be unconstitutional and invalid, and that the defendants, the trustees, may be enjoined and restrained, by the decree of this court, from removing the said mill dams, or either of them, or from any further proceedings under the said act or its supplements, and that the other defendants may, by like order and decree, be restrained and enjoined from proceeding to collect or enforce, by any levy or other procedure, any assessment made under the said acts, or either of them.”
I will notice the several grounds stated in the bill upon which this application is based.
First. That the commissioners, who were appointed under the act of 1854, proceeded to make the assessments under the act of 1855 without being newly commissioned and appointed for that purpose. It was not necessary that any new appointment should have been made. The commissioners were authorized, in express terms, by the act of 1855, to proceed and make the assessments anew. Their assessments, made under the act of 1854, were “ annulled and made void,” and the commissioners were directed to proceed anew to discharge the duties imposed upon them by the several acts. Without legislative authority they were functi officio ; but it was certainly legal for the legislature to clothe them with all the authority they could derive from a new appointment, and this was done.
Second. It is objected that the commissioners and assessors were not sworn faithfully to discharge the duties imposed upon them by the acts. This is not required to be done by either of the acts of 1854 or 1855; and if it was requisite that they should be sworn, their not being sworn is no ground for the interference of this court by injunction on the application of these complainants. These assessments were made some months since. The complainants in this bill have had abundant opportunity to have any errors in law rectified by the appropriate tribunal. *178 Their neglect and delay in not applying promptly for relief are sufficient reasons why the court will not aid them, on such a ground, at this late hour.
Third. The assessments made by the commissioners amount to the sum of §32,562.18, and the trustees are proceeding to raise the sum of §1312.13, in addition to the amount of the assessments. They are authorized, by the act, to raise, in addition to the assessments of damages to the property, an amount sufficient to cover and defray the expenses incurred in discharging the duties imposed by the act. But the bill alleges that the trustees have not made any record in writing, or anywhere filed a bill of particulars of their expenses; and it further charges, that in the amount of §1312.13 is included the expense of the proceedings under the act of 1854, which were annulled and declared void by the supplement of 1855. The mere fact of the trustees not having made any record or writing of the expenses, is a mere technical objection. The act does not require them to do so, although it is certainly proper that they should. But if the complainants want the. equitable interference of this court, and its injunction for their relief, they must show that they are prejudiced or injured by this neglect or ■ omission of the trustees. This court will only interfere by injunction to prevent some impending wrong or injury. This the complainants have attempted to show, by alleging that some of the expenses the trustees are proceeding to raise are unlawful. But I see no reason why the trustees may not raise a sufficient sum to defray the expenses of the proceedings under the act of 1854, which the legislature set aside. The reason why the legislature set aside the proceedings of the commissioners under the act of 1854 does not appear on the face of the supplement of 1855, but the bill alleges that it was because the proceedings were illegal, in consequence of some defect in the act of 1854. There is no allegation that the trustees did not proceed under the act of 1854 in good faith, or that it was from any want of *179 fidelity on their part that the expenses were unprofitably incurred. Some one must pay the expenses. They were incurred at the request, and for the benefit of the inhabitants, who desired these dams to be removed by their trustees and agents acting in good faith. It would be, under such circumstances, most inequitable and unjust to throw the burthen of their expenses upon the trustees. And certainly this court will not aid in doing it, upon the application of some of the inhabitants on whose behalf] and at whose solicitation, their expenses were, by legislative authority, in good faith incurred.
Fourth. A fourth ground taken by the bill is, that these mill dams are covered by mortgages, and that, by the act, the trustees are required to have the interest of the mortgages assessed, which they have neglected and refused to do. But if these dams are taken down without assessing the interest of these mortgages, it cannot possibly work any injury to these complainants. But this bill alleges that the mortgagees have filed their bill in this court for their own protection. If so, their rights will be protected in that suit, and these complainants be relieved from any apprehended injury that they can sustain on this ground.
Fifth. It is further objected, that the trustees have proceeded without first having obtained the consent of the inhabitants of Upper and Lower Bahway, Leesville, and their vicinity, and it is insisted that such consent is required by the act.
By the first section of the act of 1854, it is enacted,' “that it shall be lawful for the inhabitants of Upper and Lower Bahway, Leesville, and their vicinity, by their trustees, agent or agents, by this act herein after appointed, at any time after the passage of this act, whenever it shall be deemed expedient by them so to do, to pull down and remove the following dams, or any of them, namely, the mill dam,” &c.
Looking at this section by itself, the language, at first sight, would seem to imply that there was some action to *180 be taken by the inhabitants before the trustees could proceed to discharge the duties imposed upon them by the act. But taking into consideration the circumstances under which the act was passed, which appears by its preamble — the object to be effected by it, and the manner of its accomplishment — I think it is plain that the true construction of the section in question is not the one contended for by the complainants. The inhabitants of Upper and Lower Rahway and Leesville, and their vicinity, petitioned the legislature for the passage of a law authorizing them to take down and destroy certain mill dams. They represented that these dams were the cause of great sickness in their vicinity. The inhabitants had determined that it was necessary for the growth and prosperity of their villages and the surrounding country that these dams should be removed. It was to grant their request, and confer upon them power to remove the dams, that the act was passed. It could only be carried into effect by the appointment of some individuals to act on the part of the inhabitants,, and the legislature named them. They named and appointed three persons, whom they designate as trustees or agents. There was nothing to be determined by the inhabitants, or by any one else, as to the propriety of destroying the dams. That question had already been determined by the inhabitants. They had so represented to the legislature, and upon that representation had obtained the power to effect the object in view. There was no discretion left with any one, either with the inhabitants or their trustees, about the matter, except as to the time of commencing operations under the act, and, perhaps, as to removing all, or only part of the said mill dams. It is insisted that the words have exclusive reference to the inhabitants, viz. “whenever it shall be deemed expedient by them so to do.” It is insisted that the trustees had no power or authority to act, until the inhabitants deemed it expedient to have the dams, or any of them, removed. This is not the grammatical construction of *181 the sentence; and such a construction will defeat the object of the act. If the inhabitants are to determine the expediency before their trustees can act, how is their determination to be ascertained ? Is the majority to rule ? "Who are to be included in the term “ inhabitants ?” Whose judgment is to determine the expediency ? There is no way by which it can be determined when the inhabitants deem it expedient; and if there is no way, then it can never be ascertained when they deem it expedient, and consequently the trustees can never act. It may be replied, that this is a defect in the law; and if the legislature have said, that the inhabitants shall first judge of its expediency, and the act cannot be carried out because there is no mode prescribed to ascertain the sense of the inhabitants as to that expediency, then the act must fail in its object in consequence of this defect. But we are driven to no such consequences. The expediency was merely as to time, and was to be judged of by the trustees, not by the inhabitants.
But if the true and correct construction of the section is, that the inhabitants must first determine when it is expedient for the trustees to act, before they can act — still I do not think the court would be justified, on a bill filed under the circumstances that this is, upon its mere allegation that the trustees have proceeded to execute the act, without the inhabitants having first determined it was expedient for them so to do in granting the injunction prayed for. The trustees commenced their action more than a year ago. They have been at great expense and trouble in endeavoring to discharge the duties imposed upon them by this act — they have caused to be assessed damages to the owners and others having an interest in the dams — they are on the eve of pulling down the dams, having taken all the preliminary steps which are required —and now, at this last moment, a few of the inhabitants exhibit their bill of complaint, and complain of the trustees for having, more than a year ago, commenced their *182 action in the premises illegally. The complainants aré too late upon this ground. The maxim of the court is, vigilantibus et non dormientibus served lex. The court will not rely upon the mere allegation of the bill, that the trustees are proceeding without the consent of the inhabitants. Their proceedings were commenced eighteen months ago. Their first step — the application and procuring the appointment of commissioners — was recognised and confirmed by the act of 1855. The acquiescence of the inhabitants, under such circumstances, will be construed and regarded as a sufficient consent under the act, especially as no mode is prescribed for taking that consent. It is a fraud by the inhabitants upon the trustees, for the former to permit the latter to proceed for eighteen months, in good faith, to execute the law for the benefit of the inhabitants, and then for some of them to interpose the objection, that the trustees have acted without their consent, and on this ground endeavor to obstruct their proceedings. The presumption, that the inhabitants did consent, outweighs the mere allegation of the bill, that they did not. But whatever may be the strict legal rights of the complainants in this particular, they have waived all right to the equitable interference of this court on this ground, by their acquiescence in the proceedings of the trustees.
Sixth. A further objection to the proceedings of the trustees is, that the law is void, being arbitrary and despotic in its character, and embracing subjects of legislation not within the scope of legislative authority. I do not know well how to consider this objection, except by noticing the argument of the counsel, by whom it was attempted to be maintained.
The counsel admits that the legislature may authorize the taking of private property for public use under the restriction of the constitution, by awarding a “just compensation and that they may authorize individuals or private corporations to take private property for public use, just *183 compensation being first made to tbe owners. But the counsel insists, that while the sovereign power of the state, in the exercise of its right of eminent domain, may, under the restrictions of the constitution, take private property for public use, yet they cannot take it for the purpose of destroying it, and putting it out of existence; that the property must be put to public use, but that destroying it is not to use it. I give the counsel’s argument. The answer to it is very simple. The destruction of property is putting it, in many cases, to public use or utility. Property is often consumed in its very use and enjoyment. The very process of destroying it may be the most profitable public use of it, for great public utility may flow from its destruction. Upon what principle of justice or arbitrary authority can we say that, in the exercise of its right of eminent domain by the sovereign authority, the public use to which the property is put must be consistent with its perpetual existence? If property is taken for the benefit of the public, and is used for public purposes, the character of that use cannot possibly determine the legality of the law which authorizes its taking. The sovereign power, alone, must judge whether the use is such a public use as will justify the taking of the property.
But counsel further insists, that the legislature have exceeded their authority; because, in authorizing the destruction of the mill dams, they have arbitrarily marked, or mapped out, a certain district of country, upon which a tax is imposed to make compensation for the property taken.
Admitting that the legislature have the power to authorize the destruction of the dams, it follows that they have a right to levy a tax upon the community at large, or on a portion of it, to make compensation for the property taken. This power is frequently exercised. Power is conferred upon city authorities to cut sewers through the city, and in order to defray the expense, to make an as *184 sessment upon the property benefited by any particular sewer. The city is authorized to lay out public streets, and to pay the owners for their land taken ; the lands of owners adjacent, benefited by the street laid out, are taxed to pay for the land taken for the public use. This is a mere exercise of the power of taxation vested in the state government. The People v. Brooklyn City 419. And the power to tax implies a power to apportion the tax, the constitution not having, in any way, limited or abridged that power. I might instance other cases, but those I have referred to are enough to show the recognition of legislative authority to levy a tax upon a portion of the community to pay for land taken for public use. But the counsel admits that the legislature might have declared that a tax should be levied upon the community benefited, to make the compensation, but insists that they could not arbitrarily map out a certain district of country, and declare that the inhabitants of that district should be taxed to provide the compensation. But if the legislature may declare that those benefited shall be taxed to provide the compensation, and direct how it shall be ascertained who are thus benefited, it follows that what they may do indirectly they may do directly. If they may provide that two commissioners shall be appointed to ascertain who are benefited, they may dispense with the intervention of such commissioners, and themselves ascertain and declare that which they could authorize commissioners to ascertain. It is eminently just and equitable that the portion of the community at whose request the law was passed, and for whose benefit the dams are to be destroyed, should make the compensation. It is to be assumed that the legislature have ordered a tax to be levied upon that district of country most benefited, and who, upon right principles, should be taxed to pay the expense; and we have no right to assume that the legislature had not facts before them which made them as good judges, as to the portion of country upon whom this tax should in strict *185 justice be imposed, as any individuals could be whom the legislature might appoint for the purpose. "We have no more right to say that the legislature have arbitrarily fixed the district of country to be taxed to make compensation, than we would be at liberty to say of commissioners, who had exercised the same duty under appointment of law, that they had discharged their duty arbitrarily. They would be obliged to exercise their individual discretion. The legislature have exercised a legislative discretion. The determination of the legislature can with no more propriety be declared arbitrary, than the act of commissioners could be discharging the same duty, to wit, ascertaining who, injustice, should be taxed to make the compensation required by the constitution. I can see nothing in the law which renders it so repugnant to natural right and justice as to justify any court in declaring It void and inoperative for any such reason.
Seventh. The bill takes the ground that the act is unlawful, for this reason. If these dams are nuisances, then the inhabitants have the right to have them removed by the common law without making any compensation. If they are not nuisances, then there exists no reason for removing the dam, because the very right upon which their removal is justified is that they are nuisances. But it must be perceived, at once, that these are not such considerations as make the law void, or as will justify a court in interposing to prevent its being carried into effect. They are, perhaps, very good reasons to urge before the legislature against the passage of the law, but they are not arguments to be addressed to a court against its validity. To say that these dams are such nuisances as the common law can remove, is assuming what does not appear. They may be very great nuisances, and yet be beyond the reach of any process of the common law. We must assume that they are detrimental to the neighborhood, retarding the growth and prosperity of the village in their vicinity and the surrounding country. It was upon this assump *186 tion the law was passed, and it cannot he questioned for the purpose of defeating the law. The dams have produced all this evil, and are still producing it, in spite of the common law. The legislature cannot direct their removal without awarding compensation. The necessity of legislative action is apparent from the failure of all other remedies, and this court has certainly no right to say that such necessity does not exist.
The motion for an injunction must be denied, and the bill be dismissed with costs.